And we'll proceed to hear argument in the last case on the calendar for this morning, which is 24-6499 Norma Thornton v. City of Bullhead. And we will hear first from Ms. Simpson. You may proceed when you're ready. Good morning, Your Honors, and may it please the Court. Diana Simpson on behalf of Appellant Norma Thornton. I'm going to try to reserve three minutes for rebuttal. It is perfectly legal for everyone to share homemade food with others in Bullhead City Parks unless they have a charitable motivation. Charitably motivated people are singled out for worse treatment than anyone else who shares food in public parks. Now, you're not raising any kind of a First Amendment claim. This is purely a substantive due process claim. Is that correct? There is no First Amendment claim, Your Honor. It's a 14th Amendment claim. We have both due process of law and equal protection. And so this is the opposite of the law in Grants Pass, where everyone was prohibited from sleeping in public parks, but some people wanted a special exemption. Norma is not asking for an exemption from a generally applicable law. Instead, she is asking to be able to engage in conduct that is legal for everyone else, but is illegal for her because she is engaging in the thousand- Is there any generally applicable regulation for food sharing in Bullhead? No, Your Honor. Food sharing is specifically identified by the motivation at the heart of the food share. So we have to look inside people's heart and mind to determine if they have a charitable intent in order to then criminalize that. That's exactly right, Your Honor. And so I think a hypothetical exemplifies what's going on. So on Monday, Norma can have a quilting bee where she invites everybody to come quilt, and then she will provide lasagna. That's perfectly acceptable. No permits required. On Tuesday, she can have a political rally where she invites everybody to come share. She'll provide lasagna. That's perfectly acceptable. No permits required. On Wednesday, she provides the same lasagna, but this time it's to people who are hungry, people who have nowhere to go and are in need. And all of a sudden, she can't do that. She has to go through this very burdensome permitting requirement that all but bans what she's doing. And so this violates both due process of law under the history and tradition test and equal protection under Cleburne. How do you define the right? Because the Supreme Court has made clear that the right has to be defined carefully and with precision. How exactly do you define the alleged fundamental right that you claim meets the Glucksberg test? Your Honor, I think this court's recent case in Regino gives guidance to how to define the right. And under Regino, formulating the right requires the court to consult both the scope of the challenge regulation and the nature of the plaintiff's allegations. And here, the ordinance, because it turns on charitable motivation, that provides the court really what it needs to know. And so I think Norma has a right to not be singled out for her charitable motivation in order to share food. And so whatever the scope is of the broader right to perform charity, we know that within it, encompassed within that right, is this narrower right to not be burdened based on her charitable motivation. Counsel, if we recognize a right to perform charity as a fundamental right, is our analysis under the rational basis test the same for the due process claim? No, Your Honor. If it is a fundamental right, if this court recognizes it as such, I think strict scrutiny would then apply. And the city hasn't met even close to its burden under strict scrutiny. And I think there is no doubt that a right to perform charity is fundamental under Glucksberg, under the test in Dobbs, under the test in Bruin. And we know that because it's deeply rooted in history and tradition. You also argue that you prevail under the rational basis test that would apply if we were not to recognize a fundamental right, correct? That's right, Your Honor. Is there any, other than, of course, this is an interesting and novel theory that you're arguing on behalf of your client, is there any reason why we wouldn't reach the lesser, less novel issue here and just conduct an analysis under rational basis if we were to agree with you there? Your Honor, I think equal protection is perhaps an alternate way to resolve it. And the rational basis test as applied by Cleburne really charts the path forward under that one. And so the ordinance here irrationally distinguishes between people who share food in the park for charitable purposes and those who share food in the park for any other purposes. And identifying this distinction at issue is easy because it's the text of the ordinance itself. It goes through and does the exact singling out that is forbidden. Well, the city can say we have a rational basis for this particular regulation. We wanted to prevent, I think food safety was one of the reasons they've given. They also, safety and security, I believe, safety was another. They gave several reasons. Why aren't those reasons irrationally related to the restriction that they've implemented here? Your Honor, the court in Cleburne, what it did is it faced a host of arguments from the government saying that these that this action in Cleburne was rational. And so what the court did was it went through each argument and saw that the that that particular interest was not actually tied to the government action. And that's exactly what we have here. And so this law does not promote food safety at all. And we know that because what do you make of the fact that it has an exception for sealed prepackaged foods? So, Your Honor, that certainly I think that that decreases the government's interest in the trash argument that they that they put forward because nobody could hand out sealed prepackaged food even for charitable purposes. Correct. Yes, Your Honor. But it also has an exception. All right, go ahead. You have a fundamental right that it has to be my home cooking as opposed to prepackaged food. So I don't think that's how I would define the right, Your Honor. And it's because everybody else can, of course, share the prepackaged food, but everybody else can also serve that homemade food. They can share that homemade food. And the only reason Norma can't share that homemade food is because of the motivation that's in her heart. And so going back to that food safety interest, state law allows Norma to serve all of this homemade food completely exempt from any state regulation. And she can also serve that exact same food on private. It sounds like it's ultimately a discrimination claim. I mean, because even your fundamental it's not a fundamental right to present charity because you can't present charity so long as you don't use homemade food and use prepackaged food. It's that the people who can use homemade food are those with one purpose and here it's another. I think that goes to the heart of the equal protection argument. But it seems like it's your only argument because I just I don't see how when there is a means to carry out the charity and it's used prepackaged food as opposed to using homemade food. And it specifically says it's prepared, not just any prepared food, but prepared food requiring distribution in a timely manner or temperature control for safe consumption. So it is tying it to the public health concern. So, Your Honor, the point I would make in response to the kind of food safety concern is, as I just said, state law allows the sharing of that food by Norma to anybody without any regulation. State law has exempted from regulation that type of food sharing. So I think to Judge Collins point, each of the reasons that the city is given for making this restriction, whether it's food safety, public nuisance, ensuring use of the parks, etc., that the distinction really goes to the equal protection treatment of charitable sharing of food and non charitable sharing of food. So, I mean, I understand that distinction. What I am also sort of not completely understanding is how that distinction is now giving rise to your claim for a fundamental right. Your Honor, so the fundamental right question is sort of about the distinction, but it's really more about the fact that the government has prohibited certain it has prohibited people from engaging in food sharing in the public parks. And it cannot do that to the extent that your honors are skeptical of that claim. Then equal protection is is a perfectly valid route through to rule for Norma in this case. And I want to make sure I correctly understand your reading of the ordinance. Is it correct that it excludes not just sealed prepackaged foods, but also prepared food that doesn't present timing or temperature control safety issues? Yes, Your Honor.  Judgment does it. You'd asked about kind of one of the safety concerns that the government had raised before. And I think the public nuisance concern that Judge Desai had raised. And we know that that the government the law doesn't promote this kind of interest of threatening behavior. And the government can't really enact ordinances in a way that is based on stereotype and invective about people. We know that from Cleburne and we know that this law isn't about even homeless people. Generally, Norma, homeless people are allowed to use the park. The city agrees with that. And and the city articulated that basis for enacting this ordinance. What would that do to your claim? Pardon? If the city had just come out and said that they are trying to avoid the massing of homeless people in the park, would that have been would that have satisfied the rational basis? I don't think so, Your Honor, under under Cleburne, because government cannot form rules and regulations based on stereotype and based on invective. And to the extent that everyone is allowed to use the public park, that is a generally applicable rule. And everyone is entitled to use the park. They're held in common for the public use. And so to to carve out a group of people not based on the actions of a single person, but based on stereotype about that group of people that happens to be a pariah group is directly contrary to the to the holding in Cleburne. And so without kind of the government interests at issue here, without the food safety, without the trash and litter, all of which are otherwise illegal. And without this threatening behavior, all that's left is the ordinance's true aim, which is to punish homeless people and to remove them from the park. And the city admits that it can't do this, but that's all that's left once you do this Cleburne's analysis and go through. And that's illegitimate. And so unless this court has any other questions, I'd like to say the remainder of my time for rebuttal. Thank you, council. We're here now from Mr. Crown. May it please the court. This is titled a food sharing events ordinance. It's a council before you even get into your argument. I'd really like to understand so that we're all on the same page. What are the government's specific interests that justify the food sharing events? Well, there are multiple. And that the answer to your question goes right to the heart of the facts of this case, supported by the evidence of this case that is in the record for summary judgment. I would like just a list of the interests. Absolutely. You have protecting the public at large from receiving food that is unhealthy, either because it wasn't prepared in a properly licensed controlled kitchen from improper storage, improper handling. It also is the regulation in a reasonable point that if you're handing out the food at, you know, like a yoga class or a political meeting, you can do exactly the same thing so long as it's not. And you can give it out for free so long as it's not for a charitable purpose, which equally implicates the interest you just articulated. Well, again, there's a whole body of permits and regulations in the public parks of Bullhead City. And so when you have other events. Do you disagree with the premise that if the plaintiff wanted to hand out lasagna at a yoga class or a quilting class, that that would be subject to a different ordinance? A yoga class isn't the public at large. If it fits the definition of this ordinance, then it comes within the food sharing event. Because these food sharing events are non-social gatherings. So by definition, yoga class is analogous to that private birthday party or a graduation party. It's a controlled group where there's accountability. You have in this. What work does the phrase for charitable purposes do? Is any free distribution of food fall within this ordinance that is offered to the general public? I'm sorry. Is any distribution free distribution of food in the park to the general public as opposed to a closed meeting or group? Does that fall within the ordinance? Or is it a now or a subset only distribution of food to the general public for a charitable purpose? No, no, no. As you see in the Section 5.36.020 definitions, food sharing event is multifactorial. Non-social gathering is one factor. And it has to be planned, organized, promoted or advertised by a private group or organization. It has to be at a public park where prepared food requiring distribution in a timely manner or temperature control for safe consumption is served or distributed. And for charitable purposes is further defined at no cost or nominal charge. And the last factor is. OK, so you actually kind of implicitly answered my question. You were treating the phrase charitable purpose as essentially equivalent to at no cost or for a nominal charge. Yes. So that any redistribution of food that otherwise meets the requirements is covered regardless of the subjective purpose. It's the fact that food is being given out to the general public for free under these conditions. Sure. Or or nominal cost. Having a party there and giving out free food to the homeless person that's at the corner wanting a plate of food, that would be a need for a permit. If it's at a corner and not in the public park. Well, in the park, in the park. Let's say they're in the park. Let's say they're on the bench. If somebody were to give a person there, they're at a birthday party. Yeah. And somebody walks over and says, we have some leftover and you give it to a homeless person. Totally fine. That's not this. Why? It's it's free. It's giving it to someone for charitable purpose. Under the statute, I need a permit. Your example is not a planned, organized, promoted or advertised event for the purpose of feeding people at. Can you have dual purposes? I'm sorry. What if you had dual purposes? Well, if it if it if it doesn't come within the statute, then it's going to be perfectly it's going to be proper and reasonable. But if it comes within the statute and that's what Bullhead City. So so if the person decided to have a party and have a purpose of I'm going to have my friends over and have a party. And by the way, I'm also going to feed the homeless at the same time. Would that not be allowed? Well, your honor, now you get into more of the enforcement aspect. And that's no longer looking at just the plain language. If the purpose is a guise to violate the permit, then you'd be you'd be violating the ordinance. I didn't mean by the permit violating the ordinance. I want to make sure that you have the opportunity to provide me with every reason, justification that the city believes supports this ordinance. And I know you've started with protecting the public at large. And I think Judge Collins asked an important question that I would probably ask for every single purpose that you list, which is why is the focus on the charitable nature of the giving of food? But I want to hear the list also. So what are the reasons? So again, the list is there was a lot of community complaints about crime, about indecent behavior, about waste, about people defecating in the park. And that triggered an extensive over ten-year analysis with the Homeless Task Force and every community organization with Bullhead City working to address this problem on a global, multi-factor basis. So that led to that. You have lands that's on the Federal Bureau of Land Management. It is owned by the federal government. And as part of the general plan, you have to be able to have multiple uses. Now, does this apply? Does this ordinance apply to federal land? It applies because we lease it from the federal land. So yes, all the parks in Bullhead City are owned by the United States government. It is all part of the Bureau of Reclamation. And it is administered by the Bureau of Land Management. And that's in the record. So you have a lease and you have to identify the development of these parks with the multiple uses from baseball fields to tennis courts to boating activities. So you have beachfront property to ramadas to children's play areas. You have the Mojave County Health Department. And they require food safety. So again, why for this particular justification does there need to be a distinction between charitable food sharing and non-charitable food sharing? Because that was the essence of the problem that was studied for over 10 years. What was the essence of the problem? I'm sorry, I didn't mean to interrupt. But you had people that were making the parks of Bullhead City proprietary. They were coming and serving food, breakfast, lunch, and dinner. They were taking over bathrooms. They were taking over ramadas. They were taking over the picnic tables. They were taking over areas and saying, we're here, you can't be here. And so part of this, and again, I say it's a global totality of the circumstances approach, and the case law says we look at the facts. So if you had a group of school children who decided to go to the park and hand out food one Saturday afternoon, would that be something that falls into the charitable food sharing ordinance? If it's planned, organized, promoted, and advertised, where it's going to draw a large crowd. So if they just showed up, if a group of them got together on a Friday afternoon after school and said, hey, tomorrow on Saturday we should go to the park and we should hand out food, that would or would not meet. Again, if the food is prepared and not prepackaged, so you have that element and you have people coming and it's promoted. So you're going to draw a big crowd and they're going to cook at home in an unregulated condition with no controls, no accountability, no requirements, and if it comes within this definition, it would fall that you would need a permit. But to Judge Desai's question, because I also want to understand the interest, it was protecting for food safety, the crime, waste and litter, and identified. There's more to it. I have a long list and I appreciate you asking. So you have the Mojave County Health Department requirements that the food has to be, you have to have a food handler's license. You have to know what you're doing. It's not just Norma Thornton, what if you had someone that has an ill will towards homeless people? Which she had, right? I'm sorry? She had. I didn't say she had an ill will. I thought she had a food handler's permit. You wouldn't know that because without the application, you wouldn't know that. There would be no accountability. Is it a facial or as applied challenge or both? Well, they're making a facial and as applied challenge and neither one has merit. Because at the end of the day, this is both constitutional under a substantive due process analysis and procedural. But let me continue with the global analysis. When Catholic Charities built their shelter, and it's an absolutely beautiful facility, that is a licensed regulated kitchen. It serves 6,000 meals a month. And the city gives free bus passes. So it is very simple from anywhere. Not just people going to community park, which is the name of one park. There are several parks. And you get on the bus, you get off right there, you walk up the hill 150 yards. I'm sorry, I don't understand how that matters. Well, the reason it matters, it's part of the global effort. Global effort to move homeless people there? No, a homeless person can go in the park all day long. A homeless person can go get food that's given. That's why when you asked about the sidewalk, the reason is if you get it and it's not a public park and they bring it in, no problem eating it. There's no discrimination here. There's no ill intent at all. But if Bullhead City is going to allow just indiscriminate use of food that might be unsafe and someone gets injured, as I said, they're facing liability. Plus, Bullhead City is located in an isolated part of the state. They need to have their limited resources always at the ready. So by having an application process, they're able to know what events are coming. If 100 people show up for this and they're also doing a little league tournament for the weekend and they're having some other event along the Colorado River, how much police, how much fire, how much paramedics do you need to marshal the city? But if people could just show up and be proprietary, you don't have the ability to manage resources. What does the record say, if anything, about how many people would show up at Ms. Thornton's food distribution events? Well, it wasn't just her events. The record as the testimony by Toby Cotter, which is extremely compelling, and candidly, it's extremely overwhelming. You could have 50 to 100 or more people. That is taking control of a park. And without any regulation, it was three times a day, breakfast, lunch, and dinner. And so what they did was they created within the context of the other uses for the global community as a whole, they created a reasonable balance. And that's why when you look at this park, it would be the worst thing to do what the district court said. They cherry picked the record. You could cherry pick case law. You could cherry pick 1,000 years of history. But what you're never going to be able to do is the Supreme Court sending grants passes, a few judges, and I say this very respectfully, does not have the collective wisdom of the community. This is an extremely impressive display. I will say that when you compare what Bullhead City has done in this community with other communities around, they stand at the top of the list. It's very humane. It's very balanced. It's very reasonable. How do you distinguish this case from the Supreme Court case in the city of Cleburne? I'm sorry? How do you distinguish this case from the city of Cleburne? Because this case provides, first of all, you're dealing with the rational or reasonable basis test. And when you have the type of record you have, and again, it's a compelling record. So when you look at the multiple factors that have been balanced in a reasonable way, it is not just let's send it back and let's re-edit this. At some point, when the community comes together with the multitude of groups that all weighed in, and you have this. And again, no one is depriving anyone of the right to use the BARC. I think the reason that this case, and I think your friend on the other side noted it several times, is because the distinction in that case, and it would have satisfied rational basis if it had applied to everyone. And like here, this isn't an ordinance that applies to everyone. There is a carve-out for people who are sharing food for a charitable purpose. So I'm going to read from their brief, which concedes the very point you just asked. On page 31 of their brief, they state the following, and I set it out on page 52 of mine. They say, the city may regulate park food sharing generally. It may distinguish among park gatherings of certain sizes. It may more aggressively enforce its existing laws that already prohibit littering and other nuisances. It may, in short, address park nuisances in the same manner the government across the entire country has addressed park nuisances for hundreds of years. Norma does not object to that. She does not suggest that her good intent exempts her from general applicable laws governing conduct such as a ban on littering in the open hours of the park. And as this court already observed, when you apply the standard, it has to be clearly defined. It has to be concrete and specific. You just don't create some generalized right that in the name of charity we get to do anything. There is no such thing as an unfettered right to do whatever, however, and whenever you want. This is a reasonable regulation, and whether you analyze it under the Substantive Due Process Clause or the Equal Protection Clause, it meets the constitutional standards. I urge you to affirm Bullhead City. I urge you to embrace what they've done in a reasonable way, provide the judicial deference, and affirm summary judgment. Thank you. Thank you, Counsel. We'll hear rebuttal now. So one thing I'd like to mention is that the exceptions to the special events permit show that food can be distributed to public in the parks for free. And so there are three different types of regulations about food sharing generally in the parks. There's the food sharing ordinance that we challenge here. There's the special events permitting system, and then there's mobile food vendors. And so special events systems are – these are the temporary activities that are intended for purposes of entertainment, education, cultural, patriotic, religious, ethnic, or political expression. And that exempted from those events, which is to say exempted from permitting completely, are things like holiday craft boutiques and political rallies and organized league sport activities like Little League, which is what we talk about in our briefing. And so special events, they're able to share far more often than food sharing events can and the charitably motivated food sharing events. They can serve up to five times a month and no one else is barred from hosting in the same location as the food sharing ordinance does here. And so the food sharing ordinance limits each host to once monthly regardless of location. It limits each location to once monthly regardless of host, which means that Norma's ability to exercise her right is limited by someone else's ability to exercise their own rights and vice versa. And so we have these kind of three groups here. And so mobile food vendors are commercial food operations. They can operate in the park with a licensing agreement by the city. And so this first group of people who are distributing food are people who have no permit restrictions at all. These are people who are sharing for reasons other than charitably motivated purposes. These are political rallies. These are the things exempted from the special events permit. They have no limitation on any of the things they can do. The second group is this intermediate permit restriction. So the special events, they have some restrictions on them, but not nearly as many as Norma faces. And the third group is the harshest permit restrictions, which is the charitably motivated people. And so the food sharing ordinance defines the food sharing event as something that is planned, organized, promoted or advertised, not and. And so any time that Norma goes and plans to share food with people in the park, there's nothing more formal than that. As soon as she does that, takes her food to the park and shares it with people with a charitable intent, she is suddenly facing that permit restriction. And this applies without regard to the number of people that she serves, whether she serves three people, whether she serves 30 or 300, which she doesn't do. She serves about 40 people, give or take, at dinner a few times a week. And that's in the supplemental excerpts of record at 362 to 63. We know that Norma has her food handlers permit. And this is the only part of the ordinance that addresses food safety at all. And so ultimately, Norma is challenging no generally applicable laws. She's not challenging the ban on camping, which the city has and is free to enforce after grants pass. She's not banning, she's not challenging the city's ban on littering, which is generally applicable. Or any reservation system that the city could set up to kind of dictate how the park is used. She's not challenging the restriction on threatening behavior, which is already illegal. She's not challenging the restriction on public hours of the park. She simply wants to use the park in the exact same way that everyone else can who has a slightly different motivation. So unless your honors have any other question, we request that the court reverse the decision below. Thank you, counsel. The case just argued will be submitted. And that completes our calendar for this morning and the court will stand in recess.
judges: COLLINS, MENDOZA, DESAI